**PELTON & ASSOCIATES PC**
Brent E. Pelton (BP 1055)
Taylor B. Graham (TG 9607)
Alison G. Lobban (AL 1020)
111 Broadway, Suite 1503
New York, NY 10006
Telephone: (212) 385-9700

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **KENNETH TEW and DENNIS DERBY,** **Individually and on behalf of All Others Similarly Situated,**<br><br>    **Plaintiffs,**<br><br>-against-<br><br>**ROBERT'S ASPHALT COMPANY, INC., ROSEMAR CONTRACTING, INC., ROSEMAR CONSTRUCTION, INC., PATRICK TEW, JEFFREY TEW, COLLEEN TEW and ROBERT GARONE,** Jointly and Severally,<br><br>    **Defendants.** | **CLASS & COLLECTIVE** **ACTION COMPLAINT**<br><br>**2:15-cv-2379**<br><br>**Jury Trial Demanded** |

Plaintiffs Kenneth Tew and Dennis Derby (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, as class representatives, upon personal knowledge as to themselves and upon information and belief at to other matters, allege as follows:

## NATURE OF THE ACTION

1.    Plaintiffs are current and former drivers, machine operators and laborers who worked for Robert's Asphalt Company, Inc. on various public and private projects within the State of New York. Plaintiffs bring this action to recover unpaid wages and overtime premium pay owed to them and members of the putative Collective and Class pursuant to both the Fair

1

Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* and the New York Labor Law ("NYLL"), §§ 650 *et seq.*

2.        Additionally, Plaintiffs seek to recover unpaid prevailing wages, daily and weekly overtime, and  supplemental benefits which they and the members of the putative Class were entitled to receive  for work they performed pursuant to contracts entered into between Defendants, either as prime or sub-contractors, and public entities, including but not limited to, the city and state governments of New York (the "Public Works Contracts").

3.        Finally, Plaintiffs bring this action to recover damages for violations of wage notice and wage statement requirements pursuant to the NYLL and the supporting regulations.

4.        Plaintiffs bring their FLSA claim on behalf of themselves and all other similarly situated employees of Defendants and their NYLL and New York Common Law claims on behalf of themselves and a Federal  Rule of Civil Procedure 23 class of all employees of Defendants working as drivers, machine operators, and laborers.

## JURISDICTION AND VENUE

5.        This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337, and 1343, and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367. In addition, the Court has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

6.        Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this district and Defendants are located in this district.

7.        This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C.§§ 2201 and 2202.

## THE PARTIES

**Plaintiffs:**

8.      Plaintiff Kenneth Tew ("Tew") was, at all relevant times, an adult individual residing in Suffolk County, New York.

9.      Plaintiff Dennis Derby ("Derby") was, at all relevant times, an adult individual residing in Suffolk County, New York.

10.     Throughout the relevant time period, Plaintiffs performed work for Defendants at and around Robert's Asphalt located at: 1981 Montauk Hwy, Shirley, NY 11967 and in and around Long Island.

11.     Plaintiffs consent in writing to be a party to this action, pursuant to 29 U.S.C. § 216(b), and their written consent forms are attached hereto and incorporated by reference.

**Defendants:**

12.     Upon information and belief, Robert's Asphalt Company, Inc. ("Robert's Asphalt") is an active New York Corporation with its principle place of business at 1981 Montauk Hwy, Shirley, NY 11967.

13.     Upon information and belief, Rosemar Contracting, Inc. ("Rosemar Contracting") is an active New York Corporation with its principle place of business at 114 Shore Drive, Patchogue, NY 11772.

14.     Upon information and belief, Rosemar Construction, Inc. ("Rosemar Construction") is an active New York Corporation with its principle place of business at 56 Pine Street, East Moriches, NY 11940. Robert's Asphalt, Rosemar Contracting, and Rosemar Construction are hereinafter collectively referred to as the "Corporate Defendants."

15.     Defendant Patrick Tew ("P. Tew") is an owner and operator of Robert's Asphalt

who sets Robert's Asphalt's payroll policies, including the unlawful practices complained of herein. Throughout the relevant time period, upon information and belief, P. Tew was in charge of determining Robert's Asphalt's policies with respect to hiring and firing, hours worked by employees, payroll, and otherwise running the business of Robert's Asphalt.

16.     Defendant Jeffrey Tew ("J. Tew") is an owner and operator of Robert's Asphalt who sets Robert's Asphalt's payroll policies, including the unlawful practices complained of herein. Throughout the relevant time period, upon information and belief, J. Tew was in charge of supervising the employees, determining Robert's Asphalt's policies with respect to payroll, and otherwise running the business of Robert's Asphalt.

17.     Defendant Colleen Tew ("C. Tew") is an owner and operator of Robert's Asphalt who sets Robert's Asphalt's payroll policies, including the unlawful practices complained of herein. Throughout the relevant time period, upon information and belief, C. Tew was in charge of determining Robert's Asphalt's policies with respect to payroll and otherwise running the business of Robert's Asphalt.

18.     Defendant Robert Garone ("R. Garone" and, together with P. Tew, J. Tew and C. Tew, "Individual Defendants" and, together with the Corporate Defendants, the "Defendants") is an owner and operator of Rosemar Construction who sets Rosemar Construction's payroll policies, including the unlawful practices complained of herein. Throughout the relevant time period, upon information and belief, R. Garone was in charge of determining Rosemar Construction's policies with respect to payroll, and otherwise running the business of Rosemar Construction.

19.     The Individual Defendants participated in the day-to-day operations of the Corporate Defendants and acted intentionally and maliciously in their direction and control of

Plaintiffs and the Corporate Defendants' other similarly situated employees, and are "employers" pursuant to the FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as the NYLL § 2 and the regulations thereunder, and are jointly and severally liable with the Corporate Defendants.

20.     At all relevant times, Defendants have been and continue to be employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

21.     At all relevant times, Defendants employed, and/or continue to employ, Plaintiffs and each of the Collective Action members within the meaning of the FLSA.

22.     Upon information and belief, at all relevant times, the Corporate Defendants have had gross revenues in excess of $500,000.00.

23.     At all relevant times, the Corporate Defendants have used goods and materials produced in interstate commerce, and have employed two (2) or more individuals who handled these goods and materials.

## COLLECTIVE ACTION ALLEGATIONS

24.     Pursuant to 29 U.S.C. §§ 207 & 216(b), Plaintiffs bring their First Cause of Action as a collective action under the FLSA on behalf of themselves and the following collective:

> All persons employed by Defendants at any time since April 27, 2012 and through the entry of judgment in this case (the "Collective Action Period") who worked as drivers, machine operators and/or laborers  (the "Collective Action Members").

25.     A collective action is appropriate in this circumstance because Plaintiffs and the Collective Action Members are similarly situated, in that they were all subjected to Defendants' illegal policies of failing to pay overtime premiums for work performed in excess of forty (40)

hours each week. As a result of this policy, Plaintiffs and the Collective Action Members did not receive the overtime premium payments for all hours worked in excess of forty (40) hours per week.

26.     Plaintiffs and the Collective Action Members have substantially similar job duties and are paid pursuant to a similar, if not the same, payment structure.

## RULE 23 CLASS ALLEGATIONS

27.     Pursuant to the NYLL and the New York common law of contract, unjust enrichment and *quantum meruit,* Plaintiffs bring their Second through Sixth Causes of Action under Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and the following class:

> All persons employed by Defendants in New York at any time since April 27, 2009 and through the entry of judgment in this case (the "Class Period") who worked as drivers, machine operators and/or laborers (the "Class Members").

28.     The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under Federal Rule of Civil Procedure 23.

29.     The Class Members are so numerous that joinder of all members is impracticable.

30.     Upon information and belief, there are in excess of forty (40) Class Members.

31.     There are questions of law and fact common to the claims of Plaintiffs and the class members. Such common questions will determine Defendants' liability to all (or nearly all) Class Members. These common questions include whether Defendants had a corporate policy of: failing to pay overtime premiums when employees worked in excess of forty (40) hours per

week; breaching contracts with local, state and/or federal governmental entities by failing to pay Plaintiffs and the Class Members, who were third-party beneficiaries of such contracts, at New York State and/or New York City prevailing wage rates; failing and/or refusing to pay Plaintiffs and the Class Members for overtime hours at the prevailing wage overtime rates for all hours worked on prevailing wage projects in excess of forty (40) hours per workweek or eight (8) hours per day; failing and/or refusing to pay Plaintiffs and the Class Members supplemental benefits on prevailing wage jobs as required by the New York City and New York State prevailing wage schedules; unjust enrichment by failing to pay Plaintiffs and the Class Members at prevailing wage rates on prevailing wage jobs; failing to provide proper wage statements; and failing to provide proper wage notices. The answer to these questions would drive resolution of the litigation. If a judge/and or jury agrees with Plaintiffs on these issues, Defendants would be liable to all Class Members for their NYLL and New York Common Law wage and hour violations.

32.     Plaintiffs' claims are typical of the Class Members' claims. Plaintiffs and Class Members are drivers, machine operators and/or laborers who worked for Defendants pursuant to their corporate policies. Plaintiffs, like all Class Members, were, inter alia, not paid overtime wages for all hours worked over forty (40) in a given workweek; not paid prevailing wages, supplemental benefits or daily/weekly overtime prevailing wages for work performed on the Public Works Projects; and were not provided with proper wage notice and wage statements. If Defendants are liable to the Plaintiffs for the claims enumerated in this Complaint, they are also liable to all Class Members.

33.     Plaintiffs and their Counsel will fairly and adequately represent the Class. There are no conflicts between Plaintiffs and the Class Members, and the Class Representatives bring

this lawsuit out of a desire to help all Class Members, not merely out of a desire to recover their own damages.

34.     Plaintiffs' counsel are experienced class action litigators who are well-prepared to represent the interests of the Class Members.

35.     <u>The questions of law and fact common to the Class predominate over any questions solely affecting the individual members of the Class.</u> These common questions include, but are not limited to:

a.     whether Defendants employed Plaintiffs and the Class Members within the meaning of the NYLL;

b.     whether Defendants failed to keep true and accurate time records for all hours worked by Plaintiffs and the Class Members;

c.     whether Defendants failed and/or refused to pay Plaintiffs and the Class Members overtime premium pay for hours worked in excess of forty (40) hours per workweek;

d.     whether Defendants failed to provide Plaintiffs and the Class Members with proper wage statements;

e.     whether Defendants breached their contracts with local, state and/or federal governmental entities by failing to pay Plaintiffs and the Class Members the prevailing wages for all work performed pursuant to such contracts;

f.     whether Defendants breached their contracts with certain government entities by failing to pay Plaintiffs and the Class Members  the prevailing wage supplemental benefits for all work performed pursuant to such contracts;

g.     whether Defendants breached their contracts with certain government entities by

failing to pay Plaintiffs and the Class Members the prevailing wage daily and weekly overtime premiums for work performed on prevailing wage projects in excess of eight (8) hours in a day, for work performed in excess of five (5) days in a week, and for work performed over forty (40) hours in a week;

h.      whether Defendants failed to provide proper wage notice to Plaintiffs and Class Members at the beginning of their employment and/or on February 1 of each year as required by the NYLL;

i.      whether Defendant failed to provide Plaintiffs and the Class Members with a proper statement of wages, hours worked, rates paid and gross wages with every wage payment as required by the NYLL;

j.      whether Defendants' failure to properly pay Plaintiffs and the Class Members lacked a good faith basis; and

k.      whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory damages, liquidated damages, interest, costs and disbursements and attorneys' fees.

36.      A class action is superior to other available methods for the fair and efficient adjudication of this litigation.

37.      Defendants are sophisticated parties with substantial resources. The individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate defendants. The individual members of the class have no interest or capacity to bring separate actions; Plaintiffs are unaware of any other litigation concerning this controversy; it is desirable to concentrate the litigation in one case; and there are no likely difficulties that will arise in managing the class action.

## STATEMENT OF FACTS

### Defendants' Companies

38.     At all relevant times, Defendant Robert's Asphalt has been in the blacktop, oil and stone paving, and contracting business. According to the Robert's Asphalt website (http://robertsasphalt.net), Robert's Asphalt is "a family owned company operating over 36 years and counting. We strive to provide top quality workmanship for our clients' full satisfaction, making us Suffolk County's leading blacktop oil and stone specialists."

39.     Defendant Robert's Asphalt has performed paving, oil and stone paving work on numerous public works projects throughout the State of New York including, but not limited to: the Eastport Fire Department, Longwood Middle School, Cold Spring Harbor High School, Hicksville High School, as well as road work for the following municipalities: Massapequa, Brentwood, Brookhaven, Islip, Babylon and Huntington (together, the "Public Works Projects").

40.     Upon information and belief, Defendants P. Tew, J. Tew and C. Tew are a constant presence at Robert's Asphalt's central office and take an active role in ensuring that Robert's Asphalt is run in accordance with their procedures and policies. To that end, Defendants P. Tew, and J. Tew maintain offices on the premises located at 1981 Montauk Hwy, Shirley, New York, where they are in charge of hiring and firing employees, supervising employees, determining the hours worked by employees and handling the employee payroll.

41.     At all relevant times, Defendant Rosemar Contracting has been in the commercial and municipal/industrial paving, and contracting business. According to Rosemar Contracting's website (http://rosemarcontracting.com), Rosemar Contracting has "…the reputation as one of Long Island's best. With over 16 years of experience in the design and construction of commercial, municipal, and industrial paving, we are a leader in the utilization of state-of-the-art

equipment, specialized techniques and mix designs."

42.     Rosemar Contracting's website also provides in the "Project Portfolio" tab a listing of various public works projects completed throughout Long Island, including but not limited to: Town of Brookhaven, Town of Babylon, and Town of Islip.

43.     At all relevant times, Defendant Rosemar Construction has been in the asphalt paving, milling, and full depth reclamation and maintenance contracting business. According to Rosemar Construction's website (http://rosemarconstruction.com), "Since 1988, Rosemar has specialized in a full range of commercial, municipal/industrial and residential road work services on Long Island. With over 25 years of experience in the design and construction of commercial, municipal/industrial and residential work, we are a leader in the utilization of state-of-the-art equipment, specialized techniques and mix designs."

44.     Rosemar Construction's "Portfolio" tab on their website highlights their "…extensive experience satisfying rigorous bid and contract fulfillment requirements for government concrete and paving work."  The "Portfolio" tab provides a listing of various public works projects completed throughout Long Island, including but not limited to: Town of Brookhaven, Town of Babylon, Town of Islip and the Longwood Central School District. (See http://rosemarconstruction.com/portfolio/).

45.     Defendant Garone is listed as the Chief Executive Officer of Rosemar Construction in their corporate filings with the New York State Department of State, Division of Corporations.

46.     Upon information and belief, Defendant Robert's Asphalt would contract with Rosemar Construction and/or Rosemar Contracting to do driveway work.

47.     Upon information and belief, Defendant Robert's Asphalt would "loan out" its

employees to Rosemar Construction and/or Rosemar Contracting to perform work on prevailing wage jobs in which Rosemar Construction and/or Rosemar Contracting was a general contractor.

48.     Upon information and belief, Defendant Garone was often present on job sites and would supervise the workers, including those which were "loaned out" from Robert's Asphalt.

49.     Defendant Rosemar Construction and/or Rosemar Contracting's foremen would tell Robert's Asphalt employees what to do when Robert's Asphalt would perform the asphalt work on Rosemar Construction and/or Rosemar Contracting's project's driveways and on the Public Works Projects.

**The Public Works Contracts**

50.     Upon information and belief, Defendants have entered into certain contracts, as either a subcontractor or prime contractor, with public agencies to provide services upon certain government projects within the State of New York, including, but not limited to: the Eastport Fire Department, Longwood Middle School, Cold Spring Harbor High School, and Hicksville High School, or with prime contractors not currently known, to furnish labor, material and equipment to perform work on the Public Works Projects.

51.     Upon information and belief, the Public Works Contracts obligated Defendants to pay Plaintiffs and the Class Members at or above the local prevailing wage rates, including any required supplemental benefits and overtime premiums for hours worked in excess of forty (40) hours per week, eight (8) hours per day, and hours worked in excess of five (5) days in a week. Defendants' failure to pay Plaintiffs proper prevailing wage rates, supplemental benefits and overtime premiums was a corporate policy that also applied to all of Defendants' other similarly situated employees.

52.     As employees of Defendants who were assigned to work on Defendants' publicly-financed projects, Plaintiffs and the Class Members were intended third-party beneficiaries of Defendants' Public Works Contracts.

53.     As required by law, a schedule containing the prevailing rates of wages and supplemental benefits ("prevailing wage schedules") to be paid to Plaintiffs and the Class Members should have been annexed to and formed a part of the Public Works Contracts.  If not annexed to the Public Works Contracts, these schedules were expressly or impliedly incorporated into the contracts as a matter of law and/or public policy.

54.     The promise to pay and ensure payment of the prevailing wage and supplemental benefit rate stated in the Public Works Contracts was made for the benefit of all workers furnishing labor on the sites of the Public Works Projects and, as such, the workers furnishing labor on the sites of the Public Works Projects are the beneficiaries of that promise and the contracts entered into between Defendants and government agencies.

55.     Upon information and belief, in furtherance of the Public Works Contracts entered into by Defendants, Plaintiffs and other members of the putative Class performed various types of paving, oil and stone paving work, including, but not limited to, dumping asphalt, raking and rolling pavement to form blacktop and performing asphalt delivery.

56.     Upon information and belief, Plaintiffs were paid either at their regular hourly rate or at some rate below the prevailing rate of wages and supplemental benefits required for the work they were performing at the time.

57.     Upon information and belief, Defendants deliberately failed to document Plaintiffs' prevailing wages as overtime even when Plaintiffs worked over forty (40) hours, but rather would document their regular work as overtime for those hours. Therefore, Defendants

would not pay Plaintiffs at the proper prevailing wage overtime rate.

58.     Upon information and belief, Plaintiffs should have been paid at the prevailing rate of wages and supplemental benefits when they did asphalt delivery of:

a.  July 1, 2008 through June 30, 2009:  $ 32.89 plus $27.05 in supplemental benefits per hour[1];

b.  July 1, 2009 through June 30, 2010:  $33.90 plus $30.87 in supplemental benefits per hour;

c.  July 1, 2010 through June 30, 2012:  $33.37 plus $33.82 in supplemental benefits per hour;

d.  July 1, 2012 through June 30, 2013:  $34.38 plus $37.65 in supplemental benefits per hour;

e.  July 1, 2013 through June 30, 2014:  $34.77 plus $38.94 in supplemental benefits per hour;

f.  July 1, 2014 through June 30, 2015:  $35.11 plus $40.01 in supplemental benefits per hour.

59.     Upon information and belief, Plaintiffs should have been paid at the prevailing rate of wages and supplemental benefits when they did asphalt raking of:

a.  July 1, 2008 through June 30, 2009:  $ 32.71 plus $22.83 in supplemental benefits per hour[2];

b.  July 1, 2009 through June 30, 2010:  $33.89 plus $24.45 in supplemental benefits per hour;

---

[1] Pursuant to New York State Department of Labor Prevailing Wage Rates for Teamster – Asphalt Delivery – Heavy Construction Work.
[2] Pursuant to New York State Department of Labor Prevailing Wage Rates for Laborer – Heavy & Highway – Group 1 (Asphalt Rakers, Concrete Curb Formsetters).

    c.   July 1, 2010 through June 30, 2011:  $35.08 plus $26.40 in supplemental benefits per hour;

    d.   July 1, 2011 through June 30, 2012:  $40.89 plus $24.13 in supplemental benefits per hour;

    e.   July 1, 2012 through June 30, 2013:  $42.24 plus $24.73 in supplemental benefits per hour;

    f.   July 1, 2013 through June 30, 2014:  $43.47 plus $25.51 in supplemental benefits per hour;

    g.   July 1, 2014 through June 30, 2015:  $44.85 plus $25.95 in supplemental benefits per hour.

60.    Upon information and belief, Plaintiffs should have been paid at the prevailing rate of wages and supplemental benefits when they operated the asphalt roller of:

    a.   July 1, 2008 through June 30, 2009:  $44.14 plus $27.39 in supplemental benefits per hour[3];

    b.   July 1, 2009 through June 30, 2010:  $45.29 plus $28.44 in supplemental benefits per hour;

    c.   July 1, 2010 through June 30, 2011:  $47.85 plus $28.74 in supplemental benefits per hour;

    d.   July 1, 2011 through June 30, 2012:  $49.99 plus $29.34 in supplemental benefits per hour;

    e.   July 1, 2012 through June 30, 2013:  $52.50 plus $29.94 in supplemental benefits per hour;

---

[3] Pursuant to New York State Department of Labor Prevailing Wage Rates for Operating Engineer – Heavy & Highway – Class "B."

f.  July 1, 2013 through June 30, 2014:  $55.02 plus $30.07 in supplemental benefits per hour;

g.  July 1, 2014 through June 30, 2015:  $57.43 plus $31.70 in supplemental benefits per hour.

**Plaintiffs' Work for Defendants**

**Plaintiff Derby**

61.    Plaintiff Derby was employed by Defendants as a driver and machine operator at Robert's Asphalt from in or around 1992 through in or around 1998, and then again from in or around October 1, 2006 to the present (the "Derby Employment Period").

62.    Throughout the Derby Employment Period, during his work season (in or around April through in or around January) Derby was typically scheduled to work six (6) days per week. Plaintiff Derby typically began work between approximately 5:30 a.m. and 6:30 a.m. and ended between approximately 5:00 p.m. and 7:30 p.m. In total, Plaintiff Derby typically worked approximately sixty (60) to sixty-six (66) hours per week.

63.    For his work, beginning in or around 2007, Plaintiff Derby was paid twenty-two dollars ($22) per hour. Beginning in or around 2012 until the present, Plaintiff Derby was paid twenty-three dollars ($23) per hour. Notwithstanding the fact that his regular hourly rate changed during his employment, throughout the Derby Employment Period, Plaintiff Derby received twenty dollars ($20) per hour for all hours worked in excess of forty (40) hours per week.  Derby did not receive overtime premiums of one and one-half (1.5) times his hourly rate for hours worked in excess of forty (40) hours per week.

64.    Plaintiff Derby performed work on several prevailing wage jobs for Defendants either for Robert's Asphalt directly or for Rosemar Contracting and/or Rosemar Construction when he was "loaned out."

65.     Plaintiff Derby would typically drive and load debris trucks with asphalt to deliver to the prevailing wage jobs.

66.     Plaintiff Derby was "loaned out" to Rosemar Contracting and/or Rosemar Construction for many Public Works Projects, including, but not limited to: Cold Spring Harbor High School; Hicksville High School; Long Island Power Authority (Holtsville); White Cove Rd; Massapequa  and Massapequa Park; Fulton Street, Brentwood (Town of Islip); Boyle Rd. Town of Brookhaven; Locust Ave BOCES; Veterans Park, Town of Huntington Krystal and Raynor Road, Town of Brookhaven Fulton Street, Town of Islip; William Floyd Pkwy and Long Island Expressway Service Road; Dow Road, Town of Islip; Strathmore Drive, Town of Babylon 6th Street and Lake Ave, Town of Babylon; Stillwell Woods Park, Woodbury; Crescent Drive, Town of Babylon; Olympic Ave, Town of Brookhaven; Coates and Portion Road, Town of Brookhaven; Johnson Ave, LIRR parking lot; Hickory Drive, Mount Sinai; and Chestnut Ave, Mount Sinai. For his work on these and other Public Works Projects in which Defendant Rosemar Contracting and/or Rosemar Construction were contractors, Plaintiff Derby was paid twenty-three dollars ($23) per hour.

67.     Plaintiff Derby often saw Defendant Garone driving around the Rosemar Contracting and/or Rosemar Construction job sites and supervising the work.

68.     Defendant Rosemar Construction and/or Rosemar Contracting's foremen would tell Plaintiff Derby what to do when Robert's Asphalt did the asphalt on Rosemar Construction and/or Rosemar Contracting's project's driveways and on the Public Works Projects.

69.     Upon information and belief, for his asphalt delivery work on Public Works Projects for Robert's Asphalt (not when loaned out to Rosemar), for which he should have received the "Teamster-Asphalt Delivery-Heavy Construction Work" rate pursuant to the New

York State Department of Labor Prevailing Wage Schedules, Plaintiff Derby was paid a total of in or around forty-three dollars ($43.00) per hour from in or around 2009 until in or around 2012, fifty-three dollars ($53.00) per hour in or around 2013, and seventy-three ($73.00) dollars per hour from in or around 2014 until the present.

70.     Moreover, Defendants would avoid paying the overtime premium to Plaintiff Derby and other employees by paying for the prevailing wage jobs by paycheck and paying cash for any overtime work, at their regular rate of pay or less.

71.     Additionally, Defendants would typically not pay Plaintiff Derby and other employees for approximately between one (1) and three (3) hours worked on each prevailing wage job.

72.     Plaintiff Derby did not receive any health insurance, 401(k) or other benefits throughout the Derby Employment Period.

73.     From in or around 2007 to the present, Plaintiff Derby received his regular hourly rate wages in a check for up to forty (40) hours. For hours worked in excess of forty (40), Plaintiff Derby received his wages in cash at an hourly rate of twenty dollars ($20) per hour.

74.     Although Plaintiff Derby typically worked in excess of forty (40) hours per week, he never received overtime premium pay for the hours he worked in excess of forty (40) hours in a given work week.

75.     Throughout the Derby Employment Period, Plaintiff Derby's work hours were deducted thirty (30) minutes for a lunch break daily. Plaintiff Derby was rarely ever able to take a break because he was on the job site or driving, therefore, he typically ate his lunch in the vehicle while driving.

76.     When Derby wrote "no lunch" on his time sheets in an effort to inform Defendants that he was not taking lunch, he was told by C. Tew that he should not write this and was still deducted thirty (30) minutes each day.

77.     In addition to the between one and three (1-3) hours Plaintiff was not paid for per each prevailing wage job, Derby did not receive pay for all hours worked each week. While Derby would clock-in and clock-out at the shop, his pay was typically two to four (2-4) hours short each week due to auto-deduct lunches and other deductions taken by Defendants.

**Plaintiff Tew**

78.     Plaintiff Tew was employed by Defendants as a driver, machine operator, and laborer at Robert's Asphalt from in or around 1999 through in or around 2000, and then again from in or around May 2009 to July 22, 2014 (the "Tew Employment Period").

79.     Throughout the Tew Employment Period, Tew was typically scheduled to work six (6) days per week during his work season (approximately April through January). Plaintiff Tew typically started between approximately 5:50 a.m. and 6:30 a.m. and ended between approximately 5:30 p.m. and 7:30 p.m. In total, Plaintiff Tew typically worked approximately sixty-six (66) to eighty (80) hours per week.

80.     For his work, from in or around 2009 through in or around May 2011, Plaintiff Tew was paid twenty dollars ($20) per hour. Beginning in or around May 2011 until in or around June 2012, Plaintiff Tew was paid twenty two dollars ($22) per hour. Beginning in or around June 2012 until in or around June 2013, Plaintiff Tew was paid twenty four dollars ($24) per hour. Beginning in or around June 2013 through in or around September 2013, Plaintiff Tew was paid twenty five dollars ($25) per hour. Beginning in or around September 2013 until the end of his employment period, Plaintiff Tew was paid twenty six dollars ($26) per hour.

81.     Throughout the Tew Employment Period, Plaintiff Tew received his regular hourly rate for all hours worked in excess of forty (40) hours per week. Tew did not receive overtime premiums of one and one-half (1.5) times his hourly rate for hours worked in excess of forty (40) hours per week.

82.     Tew did not receive any health insurance, 401(k) or other employment benefits throughout the Tew Employment Period.

83.     Throughout the Tew Employment Period, Plaintiff Tew worked on several Public Works Projects, including but not limited to: Babylon High School, Bellport Village, Bookhaven National Lab, Longwood Schools and Bellport High School. For his work on these and other Public Works Projects, Tew was not always paid the proper prevailing wage, overtime prevailing wage, or supplement benefits.

84.     Upon information and belief, for asphalt raking work which he should have received the "Laborer – Heavy & Highway – Group 1 (Asphalt Rakers, Concrete Curb Formsetters)" rate and for asphalt rolling work which he should have received the "Operating Engineer – Heavy & Highway – Class 'B'" rate, pursuant to the New York State Department of Labor Prevailing Wage Schedules, Plaintiff Tew was paid the following rates: From July 1, 2009 to June 30, 2010, $43.78, $53.90 or $54.50; from July 1, 2010 to June 30, 2011, $47.53, $53.90, $54.50 or $57.90; from July 1, 2011 to June 30, 2012, $50.05, $54.79, or $60.78, from July 1, 2012 to June 30, 2013, $60.78 or $66.97; and from July 1, 2013 to the end of his employment with Defendants, $73.70, which are lower than the prevailing wage rates and supplemental benefits that Plaintiff Tew should have received.

85.     Moreover, Defendants would avoid paying the overtime premium to Plaintiff Tew and other employees by paying for the prevailing wage jobs by paycheck and paying cash for any overtime work, at their regular rate of pay or less.

86.     Additionally, Defendants would typically not pay Plaintiff Tew and other employees for approximately between one (1) and three (3) hours worked on each prevailing wage job.

87.     Throughout his entire Employment Period, Plaintiff Tew received his regular hourly rate wages in check for up to forty (40) hours. For hours worked in excess of forty (40), Plaintiff Tew received his wages in cash at his regular hourly rate. Although Plaintiff Tew typically worked in excess of forty (40) hours per week, he never received overtime premium pay for the hours he worked in excess of forty (40) hours in a given work week.

88.     Throughout the Tew Employment Period, Plaintiff Tew was always deducted thirty (30) minutes for a lunch break daily. Plaintiff Tew was rarely ever able to take a break because he was on the job site or driving, therefore, he typically ate his lunch while working.

89.     In addition to the one to three (1-3) hours he was not paid per prevailing wage job, Tew did not receive pay for all hours worked each week. While Tew would clock-in and clock-out at the shop, his pay was typically two to four (2-4) hours each week short due to auto-deduct lunches and other deductions taken by Defendants.

**Defendants' Unlawful Corporate Policies**

90.     Defendants' failure to pay overtime premiums of one and one-half (1.5) times the regularly hourly rate for hours worked in excess of forty (40) per week was a corporate policy that applied to all drivers, machine operators, and other laborers employed by the  Defendants.

91.     Upon information and belief, during the period of time for which Plaintiffs and the members of the putative Class performed work on Public Works Projects, Defendants failed to ensure payment of the correct prevailing rate of wages, overtime prevailing wages, and supplemental benefits for all hours worked to which Plaintiffs and other members of the putative Class were entitled.

92.     Notwithstanding the fact that Plaintiffs and other members of the putative Class sometimes worked in excess of eight (8) hours in a day, in excess of five (5) days in a week and/or more than forty (40) hours in a week, Defendants failed to pay these individuals daily overtime or the prevailing wages and supplemental benefits required by applicable prevailing wage schedules.

93.     Defendants failed to provide Plaintiffs and their other similarly situated employees with proper wage notices at the time of hire or on February 1 of each year or proper wage statement(s) with every payment of wages or accurate wage statements pursuant to the NYLL.

## FIRST CAUSE OF ACTION
## FAIR LABOR STANDARDS ACT – UNPAID OVERTIME

94.     Plaintiffs, on behalf of themselves and the Collective Action Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

95.     By failing to pay overtime at a rate not less one and one half (1.5) times the regular rate of pay for work performed in excess of forty (40) hours per week, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 et seq., including 29 U.S.C. §§ 207 (a)(1) and 215 (a)(2).

96.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA

within the meaning of 29 U.S.C. § 255 (a).

97.     Defendants' failure to pay overtime caused Plaintiffs and the Collective Action Members to suffer loss of wages and interest thereon. Plaintiffs and the Collective Action Members are entitled to recover from Defendants their unpaid overtime premium compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216 (b).

**SECOND CAUSE OF ACTION**
**<u>NEW YORK LABOR LAW – UNPAID OVERTIME</u>**

98.     Plaintiffs, on behalf of themselves and the Class Action Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

99.     Defendants willfully violated Plaintiffs' and the Class Members' rights by failing to pay overtime compensation at a rate of not less than one and one-half times the regular rate of pay for hours worked in excess of forty (40) each week, in violation of the NYLL and regulations promulgated thereunder.

100.     Defendants' failure to pay overtime premium compensation caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon. Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid overtime compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL§§ 663 (1) *et seq*.

**THIRD CAUSE OF ACTION**
**<u>NEW YORK LABOR LAW – FAILURE TO PROVIDE WAGE NOTICE</u>**

101.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

102.     Defendants have willfully failed to supply Plaintiffs and the Class Members notice as required by Article 6, § 195, in English or in the language identified by Plaintiffs and the Class Members as their primary language, containing Plaintiffs' and Class Members' rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay, if applicable; the regular pay day designated by the employer in accordance with the NYLL, Article 6, § 191; the name of the employer; or any "doing business as" names used by the employer, the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

103.     Due to Defendants' violations of the NYLL, Plaintiffs and the Class Members are entitled to recover from Defendants fifty dollars ($50) per employee for each workweek that the violations occurred or continue to occur, or a total of twenty-five hundred dollars ($2,500) per employee, as provided for by NYLL, Article 6, §§ 190, et seq., liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

**FOURTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – WAGE STATEMENT VIOLATIONS**

104.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

105.     Defendants have willfully failed to supply Plaintiffs and Class Members with an accurate statement of wages as required by NYLL, Article 6, § 195, containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone

number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

106.    Due to Defendants' violations of the NYLL, Plaintiffs and the Class Members are entitled to recover from Defendants one hundred dollars ($100) per employee for each workweek that the violations occurred or continue to occur, or a total of twenty-five hundred dollars ($2,500) per employee, as provided for by NYLL, Article 6, §§ 190 et seq., liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

**FIFTH CAUSE OF ACTION**
**BREACH OF CONTRACT**

107.    Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

108.    Upon information and belief, the public works contracts entered into by Defendants contained schedules of the prevailing rates of wages and supplemental benefits to be paid to Plaintiffs and the employees performing work pursuant to such contracts.

109.    Those prevailing rates of wages and supplemental benefits were made part of the public works contracts for the benefit of the Plaintiffs and the other employees performing work pursuant to such contracts.

110.    Defendants' failure to pay Plaintiffs at the correct prevailing wage rates for straight time, overtime, and supplemental benefits for work performed on Public Works Projects

constituted a material breach of the contracts entered into between Defendants and certain public entities.

111.   As a result of Defendants' failure to pay Plaintiffs at prevailing wage rates, they are entitled to relief from Defendants for breach of contract under New York common law of contracts.

## SIXTH CAUSE OF ACTION
## UNJUST ENRICHMENT & QUANTUM MERUIT
### (Pled in the Alternative)

112.   Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

113.   Based on Defendants' failure to pay Plaintiffs the appropriate prevailing wage rates, Defendants were unjustly enriched at the expense of Plaintiffs.

114.   Equity and good conscience require that Defendants pay restitution to Plaintiffs.

115.   Upon information and belief, when Defendants entered into the public works contracts, they agreed to pay the required prevailing wages, overtime, shift-differential and holiday premiums, and supplemental benefit rates of pay to Plaintiffs and other employees who performed work pursuant to these contracts.

116.   Plaintiffs provided valuable services to Defendants on prevailing wage projects for which Plaintiffs expected compensation.  Defendants knowingly accepted such services yet failed to pay Plaintiffs the reasonable value of such services as defined by the Nassau/Suffolk County prevailing wage schedules.

117.    As a result of Defendants' failure to pay Plaintiffs at prevailing wage rates on prevailing wage jobs and Defendants' corresponding unjust enrichment, Plaintiffs are entitled to relief from Defendants under New York's common law of unjust enrichment.

118.    As a result of Defendants' failure to pay Plaintiffs the reasonable value of the valuable services they rendered, Plaintiffs are entitled to relief from Defendants under New York's common law of quantum meruit.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs, on behalf of themselves and all other similarly situated Collective Action Members and Class Members, respectfully request that this Court grant the following relief:

a.      Designation of this action as a collective action on behalf of the Collective Action Members and ordering the prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b) and appointing Plaintiffs and their counsel to represent the Collective Action Members;

b.      Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) on behalf of the Class Members and appointing Plaintiffs and their counsel to represent the Class;

c.      An order tolling the statute of limitations;

d.      A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

e.      An award of compensatory damages as a result of Defendants' failure to pay overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

f.      An award of liquidated and/or punitive damages as a result of the Defendants' willful failure to pay overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

g.      An order declaring that Defendants are guilty of unjust enrichment and breach of contract under New York common law;

h.      An award of wages at the required prevailing wage rate, along with daily overtime premiums, weekend premiums, supplemental benefits and such other benefits required to be paid to Plaintiff pursuant to Defendants' contracts with public entities;

i.      Fifty dollars ($50) per Plaintiff and each of the Class Members for each workweek that the violations of NYLL, Article 6 § 195 occurred or continue to occur, or a total of twenty-five hundred dollars ($2,500) per Plaintiff and each of the Class Members as provided for by NYLL, Article 6 § 198(1)-b;

j.      One hundred dollars ($100) per Plaintiff and each of the Class Members for each workweek that the violations of NYLL, Article 6 § 195 occurred or continue to occur, or a total of twenty-five hundred dollars ($2,500) per Plaintiff and each of the Class Members as provided for by NYLL, Article 6 § 198(1)-d;

k.      An injunction against the Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with

Defendants, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

l.      An award of prejudgment and post-judgment interest;

m.     An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

n.      Such other and further relief as this Court deems just and proper.


## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by the complaint.

Dated: New York, New York
       April 27, 2015

PELTON & ASSOCIATES PC

By: _____
Brent E. Pelton (BP 1055)
Taylor B. Graham (TG 9607)
Alison G. Lobban (AL 1020)
111 Broadway, Suite 1503
New York, New York 10006
Telephone: (212) 385-9700
Facsimile: (212) 385-0800

*Attorneys for Plaintiffs and the putative collective and class*

March 9, 2015

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of Robert's Asphalt Corporation Inc. and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me overtime wages, prevailing wage, and minimum wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being **named as the representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. I understand that I will be represented by Pelton & Associates PC without prepayment of costs or attorneys' fees. I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.


Signature                      3/09/15                 DENNIS J. DERBY
                               Date                    Printed Name

February 26, 2015

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of Robert's Asphalt Corporation Inc. and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me overtime wages and minimum wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being **named as the representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. I understand that I will be represented by Pelton & Associates PC without prepayment of costs or attorneys' fees. I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.


_____          2-26-15          _____
         Signature                    Date                 Printed Name